

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| vs. § | Criminal Action No.: 7:07-1467-MGL-42 |
| § | |
| LATRONE ANTONIO HICKS, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR A SENTENCE REDUCTION,
FOR COMPASSIONATE RELEASE, AND TO APPOINT COUNSEL**

### I.  INTRODUCTION

Pending before the Court are Defendant Latrone Antonio Hicks's (Hicks) pro se motions for a sentence reduction, for compassionate release, and to appoint counsel. Having carefully considered the motions, the responses, the sentence reduction report (SRR) prepared by the United States Probation Office (USPO), the record, and the applicable law, it is the judgment of the Court the motions will be denied.

### II.  FACTUAL AND PROCEDURAL HISTORY

A jury convicted Hicks of conspiracy to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

At sentencing, the Court assigned Hicks a total offense level of forty-two and five criminal history points, which resulted in a criminal history category of III. Together, this meant Hicks's

guideline range was 360 months to life imprisonment. The Court thus sentenced Hicks to 360 months, followed by five years of supervised release. He currently has a projected release date of August 12, 2033.

Hicks previously filed a motion for compassionate release, which the Court denied. He thereafter filed these motions for a sentence reduction, for compassionate release, and to appoint counsel. The USPO prepared the SRR, and the government responded. Hicks later amended his compassionate release motion, and the government filed additional responses. Having been fully briefed on the relevant issues, the Court will now adjudicate the motions.

**III.   MOTION FOR A SENTENCE REDUCTION**

Hicks argues he is eligible for a sentence reduction under Amendment 821 to the United States Sentencing Guidelines (U.S.S.G.). The government, however, asserts Amendment 821 is inapplicable to Hicks. Indeed, the SSR states Hicks is ineligible for relief.

On November 1, 2023, Amendment 821 took effect. It became retroactive on February 1, 2024. Part A of the amendment addresses status points—criminal history points added if a defendant was under a criminal justice sentence, such as probation or supervised release, at the time of the offense. It decreases them by one point for individuals with seven or more criminal history points and eliminates status points for those with six or fewer criminal history points. U.S.S.G. amend. 821, Part A.

Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of two offense levels for "Zero-Point Offenders" (those with no criminal history points) whose offense lacked any specified aggravating factors.

As the Court stated above, Hicks received five criminal history points, so he is unqualified as a zero-point offender. Similarly, he was unassigned any status points, so his guideline range is likewise unaffected. Amendment 821 is therefore an unviable basis upon which to reduce his sentence. *See id.* § 1B1.10(a)(2)(B) ("A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [a]n amendment . . . does not have the effect of lowering the defendant's applicable guideline range.").

To the extent Hicks asks the Court to appoint him counsel, the former Chief Judge of the District of South Carolina previously issued a standing order appointing the Office of the Federal Public Defender for the District of South Carolina (FDO) to represent any defendant and determine whether he may qualify for a sentence reduction under Amendment 821. *See In re: Petitions for Application of Retroactive 2023 Criminal History Amendments to the Sentencing Guidelines*, No. 3:23-mc-802-RBH (Oct. 20, 2023). But, because the Court determines Hicks is ineligible for relief under this provision, it will refrain from requiring the FDO to make any filings as to this motion.

### IV.     MOTION FOR COMPASSIONATE RELEASE

#### A.     *Standard of Review*

After a defendant has exhausted his administrative remedies, "[a] district court analyzes [his] compassionate release motion in two steps." *United States v. Woody*, 115 F.4th 304, 310 (4th Cir. 2024).

"First, the [C]ourt must determine [the defendant] is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' for release." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (citing *United States v. Hargrove*, 30 F.4th

3

189, 194–95 (4th Cir. 2022)); 18 U.S.C. § 3582(c)(1)(A)(i).  In doing so, the Court shall consider whether the extraordinary and compelling reasons are "consistent with applicable policy statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement identifies six circumstances that, individually or in combination, may provide extraordinary and compelling reasons for a sentence reduction: (1) certain medical circumstances of the defendant; (2) the defendant's age and conditions related thereto; (3) the defendant's family circumstances; (4) the fact the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, (5) the presence of "any other circumstance or combination of circumstances . . . similar in gravity to" other enumerated circumstances; and (6) under certain circumstances, where there has been a qualifying change in the law.  U.S.S.G. § 1B1.13(b).

"Second, the [C]ourt [must] consider[] whether the 18 U.S.C. § 3553(a) [(Section 3553(a)] sentencing factors support relief."  *Moody*, 115 F.4th at 310 (citing *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023)).  "District courts 'enjoy broad discretion' in evaluating the [Section] 3553(a) factors when deciding a motion for compassionate release."  *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)).

### B.    *Discussion and Analysis*

As an initial matter, Hicks has exhausted his administrative remedies.  *See* 18 U.S.C. § 3582(c)(1)(A) (explaining a defendant may bring a motion for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [(BOP)] to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").  The Court will thus turn to the merits of his motion.

> 1. *Whether Hicks presents extraordinary and compelling reasons warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)*
>
>> a. *Whether Hicks's medical conditions constitute extraordinary and compelling reasons*

Hicks first contends he is entitled to compassionate release because he suffers from asthma and obesity. The government, however, maintains these conditions are common and fail to justify compassionate release.

Extraordinary and compelling reasons exist with respect to a defendant's medical condition where, as is relevant here, the defendant is "suffering from a serious physical or medical condition . . . . that substantially diminishes [his] ability . . . provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover[,]" U.S.S.G. § 1B1.13(b)(1)(B)(i), or "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death[,]" *id.* § 1B1.13(b)(1)(C). Here, the Court concludes Hicks has neglected to demonstrate either reason applies.

Hicks's medical records indicate he was diagnosed with asthma as a child. Although his asthma worsened once in 2002, it has otherwise remained stable. In fact, when the USPO prepared the presentence investigation report in 2009, Hicks reported he was in good health, not under the care of any physician, and not taking any prescription medications. In 2010, Health Services diagnosed Hicks with acute bronchitis, which Hicks later mistakenly called "asthma." His medical records, however, indicate the condition resolved that year.

In 2010, Hicks returned to Health Services, reporting exertion when he walked up stairs. Hicks denied coughing, wheezing, or experiencing shortness of breath, and his lung sounds were clear. For that reason, Health Services prescribed an albuterol inhaler and advised Hicks to return if his symptoms worsened.

5

Hicks has neglected to provide any details as to whether he still suffers from asthma and, if so, whether it is moderate or severe. The Court is thus unpersuaded his asthma constitutes a serious condition or requires some long-term or specialized medical care the BOP is unable to provide.

Turning to Hicks's obesity, his maximum documented weight while in BOP custody is 214 pounds. But, he now weighs 204 pounds. This results in a body mass index of 33.9, placing Hicks within the Center for Disease Control's (CDC) group of Class I Obesity. *See* CDC, *Adult BMI Categories*, https://www.cdc.gov/bmi/adult-calculator/bmi-categories.html (last visited May 27, 2025). Nevertheless, as the government aptly notes, obesity is increasingly prevalent in the United States, with 41.9% of adults twenty and older qualifying as obese. *See* CDC, *Adult Obesity Facts*, https://www.cdc.gov/obesity/adult-obesity-facts/index.html (last visited May 27, 2025). And, as with Hicks's asthma, he has neither shown his obesity is a serious condition, demonstrated it requires some long-term or specialized medical care the BOP is unable to provide, nor established he is unexpected to return to a health weight.

Finally, to the extent Hicks insinuates his medical conditions are restrictive or otherwise debilitating, this conflicts with his proposed release plan, which states Hicks intends to work as a skilled laborer for a general contractor.

For all these reasons, the Court is unable to conclude Hicks is "suffering from a serious physical or medical condition . . . . that substantially diminishes [his] ability . . . provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover[,]" U.S.S.G. § 1B1.13(b)(1)(B)(i), or "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk

of serious deterioration in health or death[,]" *id.* § 1B1.13(b)(1)(C). Hence, his medical conditions fail to constitute extraordinary and compelling reasons under the policy statement.

### b. *Whether Hicks's family circumstances constitute extraordinary and compelling reasons*

Hicks next asserts he is entitled to compassionate release because he wishes to become the primary caretaker for his uncle, who is undergoing chemotherapy and is currently under the care of Hicks's grandmother. The government, however, maintains Hicks has neglected to demonstrate he is the only available caregiver for his uncle.

To constitute an extraordinary and compelling reason based on the defendant's need to care for the incapacitation of "an individual whose relationship with the defendant is similar in kind to that of an immediate family member[,]" the policy statement requires "[t]he defendant [to] be the only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3)(D).

Even assuming Hicks's uncle is "an individual whose relationship with [Hicks] is similar in kind to that of an immediate family member[,]" *id.*, the Court agrees with the government Hicks has nevertheless failed to establish a lack of other available caregivers.

The record indicates Hicks has an adult daughter, a mother, a father, a sister, and a brother-in-law. But, Hicks has neither alleged these individuals are unavailable to care for his uncle nor specified with particularity why his grandmother is unable to continue her role as caretaker. Accordingly, the Court determines his family circumstances also fail to rise to the level of extraordinary and compelling reasons under the policy statement.

### c. *Whether a change in the law constitutes an extraordinary and compelling reason*

Finally, Hicks argues Amendment 790 to the U.S.S.G., which clarifies the use of relevant conduct in offenses involving multiple participants, is an extraordinary and compelling reason justifying compassionate release.

As is relevant here, the policy statement provides that, in certain circumstances, "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason[.]" U.S.S.G. § 1B1.13(b)(6). Amendment 790, however, became effective more than six years after Hicks was sentenced, and it is prospective only. *See, e.g.*, *United States v. Brown*, 694 F. App'x 62, 64 n.1 (3d Cir. 2017) (explaining "Amendment 790 . . . has not been made retroactive"). Thus, the Court is unable to consider Amendment 790 under the policy statement.

*****

For all these reasons, the Court concludes Hicks has neglected to show extraordinary and compelling reasons warranting compassionate release.

> **2.** *Whether the Section 3553(a) factors weigh in favor of compassionate release*

Even if the Court determined extraordinary and compelling circumstances exist in this case, analysis of the Section 3553(a) factors would preclude any reduction in Hicks's sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining the Court may grant compassionate release only "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable"). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes by the defendant;
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for [the offense] . . . ;

8

(5)  any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Hicks pled guilty to a serious offense. He was indicted in a large-scale drug conspiracy involving forty-six codefendants. He supplied copious amounts of cocaine, crack cocaine, and marijuana from his residence in Atlanta, Georgia, and instructed his couriers to fulfill drug deliveries across state lines. He fled from authorities on multiple occasions and used a fraudulent driver's license while attempting to evade law enforcement.

Hicks also has an established criminal history, which includes convictions for possession with intent to distribute cocaine, driving with a suspended license, theft by taking, and driving under the influence. He has been arrested numerous times on drug- and firearm-related charges. And, he has been disciplined for possessing tobacco and other unauthorized items in the BOP.

Hicks has taken steps toward rehabilitating himself while in custody. Although the Court is pleased with Hicks's rehabilitation efforts and encourages him to continue them, he has done no more than the Court hopes of every defendant. *Cf.* 28 U.S.C. § 994(t) (explaining "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason").

Moreover, Hicks's 360-month sentence is within the lower-end of his guidelines range of 360 months to life imprisonment and fails to create any unwarranted disparities among similarly situated defendants.

Thus, upon balancing the Section 3553(a) factors, the Court determines Hicks is unentitled to a sentence reduction. His current sentence is sufficient but no longer than necessary to promote respect for the law, provide adequate deterrence, and reflect the seriousness of his offense, and it

is a just punishment in this case. The Court will therefore deny Hicks's motion for compassionate release.

Also, inasmuch as Hicks has effectively set forth his arguments in his motion for compassionate release and is nevertheless unentitled to relief, the Court will also deny his motion to appoint counsel. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (explaining the Court need not appoint counsel for a compassionate release motion).

## VI.    CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Hicks's motions for a sentence reduction and for compassionate release, ECF Nos. 2454 and 2476, as well as his motion to appoint counsel, ECF No. 2455, are **DENIED**.

**IT IS SO ORDERED.**

Signed this 18th day of June 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE